DILL *et al. v.* VOSHALL.

(*Supreme Court, General Term, Fifth Department.* October 23, 1891.)

NEGLIGENCE—OBSTRUCTING PASSAGE-WAY—EVIDENCE—NONSUIT.

Deceased was killed while attempting in the night-time to drive through a dark, covered passage-way, leading from the street to his mother's house. There was one witness of the occurrence, whom deceased asked to open the gates at the entrance of, and which swung into, the passage-way. As he opened the gate on the south side the horse plunged into the passage-way, and the driver was thrown out and instantly killed. It was claimed that defendant was responsible for the death; that he had placed bags of cement within the passage-way along the south wall, so that they prevented the gate on that side being fully opened; and that the bags, being white, frightened the horse. It appeared that he had placed the bags within the passage-way by consent of the owner of the premises, and there was also evidence that he had been requested to remove them. The witness testified that he thought that the gate which he opened was swung back so far that there was more than 12 inches between it and the south wheel track. *Held*, that a nonsuit was properly granted.

Exceptions from circuit court, Monroe county.

Action by Ann M. Dill and another, administrators, against Charles W. Voshall, for injuries resulting in the death of Frank Dill. A nonsuit was granted, and plaintiffs move for a new trial on a case and exceptions, ordered to be heard at the general term in the first instance.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*George D. Reed*, for plaintiffs. *Thomas Raines*, for defendant.

MACOMBER, J. This action is brought to recover for injuries resulting in the death of Frank Dill, the son of the plaintiff Ann M. Dill, on the 3d day of May, 1889. The deceased was attempting to drive from North Clinton street, through a covered way, into the premises of his mother. In order to reach his mother's house it was necessary to drive through a space 10 feet 9 inches in width, from wall to wall, and covered for a distance of 28 feet. This drive-way was shut off by two gates, one of which was 7 feet 2½ inches in width, hanging upon hinges fastened to a post on the south wall of the drive-way, and the other hanging upon hinges fastened to a post upon the north wall of the drive-way, the latter being about 3 feet in width.

When closed, both gates came together at a low foot post standing 3 feet 4 inches from the north wall of the drive-way. To this foot post the large gate was fastened by a hook, which held it in place; and the smaller gate was fastened to the larger one by means of a latch. Both gates swung into the drive-way, the largest one towards the south wall, and the smaller one to the north wall. A board walk existed along the north wall, 2 feet 3 inches in width. The drive-way, so far as it was covered, was, in the night-time, a dark passage-way. The south wheel track was shown to be a little over 3 feet from the south wall, and the north wheel track to be 3 feet 4 inches from the north wall. The deceased, who had driven in and out of this place during the day, when first seen by the witness, appeared in front of the entrance at 10:40 P. M., with his horse's forefeet upon the sidewalk, desiring to enter through the passage-way to his mother's house. The only eye-witness of the occurrence, who was passing along the sidewalk at this time, was asked by the deceased to open the gate, in order that he might pass in, and was instructed by the driver how to proceed to open it. This witness finally took hold of the large gate at its further end, and was required, inasmuch as it sagged to the ground, to lift it along; but at a time, so far as the evidence discloses the fact to be, before he had carried the gate as far as it would go, the horse, which was at this time very restive, reared and plunged into the passage-way, so that the witness was obliged to scramble to get out of its way. In some manner or other, not clearly disclosed by the evidence, the driver was thrown from the buggy, (the wheels having passed upon the sidewalk upon the north side of the passage-way,) and received a blow upon his head, from what source it is impossible to tell, resulting in his immediate death. It is claimed in behalf of the plaintiffs that the defendant is responsible for the death of Frank Dill. The charge against him is that he placed bags of cement within the passage-way, standing them on end along the south wall, so that on opening the gates the large gate could not be placed back parallel with the wall, but at a distance four or five pickets from the hinges the same came in contact with the bags, thus preventing a clear opening. These bags of cement, which the defendant, being a builder, was using in the construction of a building adjacent to Ann M. Dill's premises, had originally been placed along the south wall of the passage-way by the consent of the owner of the premises. There is evidence that the defendant had been requested to remove the bags, but had neglected to do so. The plaintiffs' contention is that these bags, being white objects, appearing in a dark passage-way, frightened the horse. But the testimony of the witness to the occurrence, taken as a whole, completely negatives such contention. The witness had made no motions to open the small gate, but it is, perhaps, a sufficient answer to that to say there was evidence to the effect that the small gate, when released from the larger one, would, by gravity, swing back to the north wall. The witness says that he swung the large gate around until it came to a jar, and that he could not push it any further, and, at that instant the horse gave a leap, plunging towards the north wall, and, as the horse plunged into the drive-way, the witness fell back, hearing the crash at the same instant. This witness subsequently visited the place of the accident, and placed the gate in the spot, as his recollection showed it to be at the time of the accident, swinging it back to a point as far as he had swung it on the night in question; and he says, as a result of those subsequent observations, the further or swinging end of the gate was, at the time of the occurrence, $12\frac{1}{2}$ inches south of the south edge of the south wheel track. The evidence, taken all together, shows that the claim made against the defendant is placed upon an hypothesis which finds no support in the evidence. Had the jury rendered any verdict under these facts other than that the deceased came to his death by reason of the unruly plunging of the horse, it would not have been supported by the preponderance of the evidence. It follows,

therefore, that the nonsuit was properly granted, and the motion for a new trial should be denied.    Motion for a new trial denied, with costs, and judgment ordered for the defendant upon the nonsuit.    All concur.